UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA,<br>                  Plaintiff,<br><br>vs.<br><br>DAVID YOUNG, CHRISTOPHER HARRIS, MICHAEL TAYLOR, and AMERICAN INTERNATIONAL SECURITY CORPORATION,<br>                  Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:12-cr-502<br>Judge Tena Campbell |

## I. Introduction

Currently pending before the court are two motions to transfer venue, one submitted by Defendant David Young (Docket No. 65), and another submitted by Defendant Michael Taylor and his closely-held business, Defendant American International Security Corporation (AISC)[1] (Docket No. 69). Mr. Young, Mr. Taylor, and AISC are three of four Defendants charged with criminal offenses alleged to have been perpetrated in Utah, Massachusetts, Florida, and Afghanistan. Mr. Taylor and AISC ask the court to transfer the charges brought against them to the District of Massachusetts, where they are based. Mr. Young also asks the court to transfer the charges brought against him to the District of Massachusetts, even though he lives and works in Florida. For the reasons set forth below, the court denies both of the motions. The background of this case is set forth in the Indictment (Docket No. 11) and the parties' pleadings. The court will not repeat any of this background except when necessary to explain the order.

---

[1] In his motion to transfer venue, Mr. Taylor alleges he is the founder and sole shareholder of AISC. (Mem. in Supp. of Defs. Michael Taylor and Am. Int'l Sec. Corp.'s Renewed Mot. to Transfer 8, ECF No. 69-1.)

## II. Analysis

Rule 21(b) of the Federal Rules of Criminal Procedure allows the court, in its discretion, to transfer an action "to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b). The court is guided by the oft-cited general rule that a criminal prosecution should be retained in the original district where the indictment was returned—transfer is appropriate only if a trial in the original district would be "so unduly burdensome that fairness requires the transfer." United States v. Posner, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) (quoting United States v. U.S. Steel Corp., 233 F. Supp. 154, 157 (S.D.N.Y. 1964)). To be unduly burdensome, "[t]he facts must compel and not merely support" the transfer of venue. United States v. Hunter, 672 F.2d 815, 816 (10th Cir. 1982) (emphasis added). Consequently, defendants who seek a change of venue have a formidable burden, and few succeed in persuading a court to change venue. United States v. Marcello, 280 F. Supp. 510, 515 (E.D. La. 1968).

To determine whether a defendant has shown facts that compel transfer, a court must consider the ten factors laid out in Platt v. Minnesota Mining & Manufacturing Company, 376 U.S. 240 (1964):

> (1) location of corporate defendant [or the individual defendants[2]]; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each

---

[2] "Although Platt involved a corporate defendant, the ten Platt factors are used in cases involving individual defendants as well." In re United States, 273 F.3d 380, 388 (3d Cir. 2001).

district or division involved; and (10) any other special elements which might affect the transfer.

Id. at 243–44; see also Hunter, 672 F.2d at 816.  The list of factors is nonexclusive, and no factor by itself is dispositive; instead, it is within the sound discretion of the court to strike a balance and determine which factors are of greatest importance, based on the totality of the circumstances.  United States v. Maldonado, 922 F.2d 934, 966 (2d Cir. 1990); United States v. Garza, 664 F.2d 135, 139 (7th Cir. 1981); United States v. Calabrese, 645 F.2d 1379, 1384 (10th Cir. 1981).

   **1. Location of Defendants**

Some courts have given considerable weight to the defendant's interest in being tried in the district where he resides.  United States v. Layne, No. 05 CR. 87 (HB), 2005 WL 1009765, at *2 (S.D.N.Y. May 2, 2005).  But to the extent there is a policy favoring the trial of defendants where they reside, this policy is in tension with the more general presumption that a criminal prosecution should be retained in the original district where the indictment is brought.  United States v. Spy Factory, Inc., 951 F. Supp. 450, 464 (S.D.N.Y. 1997).  In multi-defendant trials, some courts consider this factor using only the location of the moving defendants, while other courts consider the location of all the defendants.  United States v. Valdes, No. 05-CR-156, 2006 WL 738403, at *4 (S.D.N.Y. Mar. 21, 2006) (considering only the moving defendants); United States v. Aronoff, 463 F. Supp. 454, 458, 460 (S.D.N.Y. 1978) (same); United States v. Estrada, No. 12 CR. 99 (SHS), 2012 WL 3083477, at *2 (S.D.N.Y. July 20, 2012) (considering all the defendants); United States v. Kanner, No. 07-cr-1023 (LRR), 2008 WL 2663414, at *6 (N.D. Iowa June 27, 2008) (same).

The court finds persuasive the case law that considers the locations of all the defendants. The Defendants in this case reside in three separate states. Mr. Harris appears to reside in Utah. Mr. Taylor is a life-long resident of Massachusetts, and in his motion he describes many ties and ongoing family responsibilities in the area. AISC is also based in Massachusetts and conducts business there. And, although Mr. Young states that he has "lived off-and-on in the New England area over the years," it is undisputed that Mr. Young resides and works in Florida. In his motion, Mr. Young does not allege any ties linking his own residence to Massachusetts, nor does he allege that he has any responsibilities requiring his ongoing presence in Massachusetts. The weight of this factor in favor of transfer is reduced, if not neutralized, because of the wide distribution of locations and the defendants' varying concerns in each of those states.

2. **Location of Witnesses**

The location of witnesses has been noted by some courts as a significant factor. See United States v. Daewoo Indus. Co., Ltd., 591 F. Supp. 157, 160 (D. Or. 1984). But bare allegations that witnesses will be inconvenienced by trial in a distant forum is not sufficient to support transfer; instead, defendants must explain why witnesses would be unable to testify due of the location of the trial, and the court must rely only on concrete demonstrations of the proposed testimony. Spy Factory, 951 F. Supp. at 456.

Mr. Young specifically identifies one witness: Major Todd Cox, who resides in Hawaii. As for the rest of his potential witnesses, Mr. Young generally states that they "reside in the eastern United States;" some "reside in Massachusetts;" and some "live in close proximity to Massachusetts." (Mem. in Supp. of Def. David Young's Mot. to Transfer 5–7, ECF No. 66.) Mr. Young offers no specific examples or concrete demonstrations of how holding a trial in Utah will cause these witnesses to be unable to testify. In contrast, the government lists well over fifty

4

witnesses who are distributed nationwide with a heavier concentration in the Western United States. The District of Utah "is a convenient geographic 'midpoint' for a nationwide prosecution." Kanner, 2008 WL 2663414, at *6. Consequently, Mr. Young has not carried his burden to show that this factor weighs in his favor.

Mr. Taylor has given the court detailed lists of his proposed witnesses, where they are located and what they might testify about. Mr. Taylor lists five individuals based in Massachusetts: himself, a manager of AISC, an accountant of AISC, an administrative assistant of AISC, and a subcontractor. Mr. Taylor lists four companies in Massachusetts: Mellon Bank, Bank of America, Citizens Bank, and Evidox Corporation (a computer and document retrieval company). Mr. Taylor also lists five individuals located in various other states and nations: a subcontractor in Louisiana, a consultant in Maryland, an individual in Iraq, a codefendant in Florida (Mr. Young), and an Army officer in Pennsylvania. Mr. Taylor argues that it would be more convenient for his witnesses if the trial were held in Massachusetts. However, Mr. Taylor does not demonstrate how a trial in Utah would prevent any of his witnesses from testifying. Mr. Taylor's contention here is "limited to the cost to him of transporting his witnesses to [Utah] for trial, which is a separate factor." Estrada, 2012 WL 3083477, at *3. Accordingly, Mr. Taylor has not carried his burden to show that this factor weighs in his favor.

   3. **Location of Events**

Some courts have said that the location of key events carries considerable weight. United States v. Martino, No. S1 00 CR. 389 (RCC), 2000 WL 1843233, at *7 (S.D.N.Y. Dec. 14, 2000). For example, while venue may be appropriate in multiple districts, when the "nerve center" of the events occurred in one district, transfer to that district has been found to be appropriate. See id.; United States v. Haley, 504 F. Supp. 1124, 1128 (E.D. Penn. 1981). But

when the alleged criminal activity is national in scope and has ties to multiple sites, the location of the events favors neither side. Valdes, 2006 WL 738403, at *6; Layne, 2005 WL 1009765, at *4; Spy Factory, 951 F. Supp. at 457; see also United States v. Guastella, 90 F. Supp. 2d 335, 339 (S.D.N.Y. 2000) ("[B]ecause the criminal activity that was alleged to have occurred in this case was national and even international in scope, and had ties to both New York and Las Vegas, the location of the events at issue favors neither side.").

Based on the filings in this case so far, it appears that the events are national and even international in scope. The indictment alleges that the criminal scheme originated in Afghanistan, the bribery occurred in Afghanistan, the contract bids were submitted in Afghanistan, the contract related to work in Afghanistan, and money was funneled by some of the Defendants while they resided in Afghanistan. Mr. Young states that Afghanistan is a "non-domestic venue," and instead focuses his argument on the events that allegedly took place in Massachusetts, such as exchanges of communication, logistical efforts, transfers and payments of money, and preservation of records. But, Mr. Young undermines his own argument by conceding that Afghanistan has a strong claim to being the nerve center. (See Mem. in Supp. of Def. David Young's Mot. to Transfer 12, ECF No. 66 ("Aside from Afghanistan, Massachusetts was the center of the allegedly criminal activity.").)

Mr. Taylor raises a similar argument, arguing that the key events took place in Massachusetts so that Massachusetts was the nerve center. But the argument over whether the key location was Massachusetts or Afghanistan does not take into account the two other locations described in the indictment: Utah and Florida. The alleged criminal activity is national and international in scope, and has multiple sites of alleged wrongdoing by the Defendants. Viewed as a whole, the indictment alleges a wide-spread net of illegal activities without any

centralized nerve center, spanning at least three states and two nations. Accordingly, this factor does not favor either side.

   4. **Location of Documents and Records**

In the current electronic age in which most documents can be easily scanned and sent digitally to just about any location, and in which transportation of tangible objects is rapid and reliable, this factor seems of minimal importance in the court's determination whether to transfer venue. See United States v. Hanley, No. 94 CRIM. 394 (DAB), 1995 WL 60019, at *3 (S.D.N.Y. Feb. 10, 1995). The only tangible objects appear to be some electronic devices and computers located in Utah, but neither side argues these objects could not be easily transported elsewhere. So this factor does not favor either side.

   5. **Disruption to Defendant's Business**

"Inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer of venue." Guastella, 90 F. Supp. 2d at 340 (quoting United States v. Antia, NO. 97 CR 733, 1999 WL 294788, at * 2 (E.D.N.Y. Mar. 22, 1999)). Inconvenience and interference with normal business activities occurs whenever a defendant is involved in a trial facing serious charges, regardless of where the trial takes place. Spy Factory, 951 F. Supp. at 458. Moreover, some courts have stated that modern technology renders this concern less important because business can be conducted from afar through electronic communication. Id.; Estrada, 2012 WL 3083477, at *4. However, some courts have weighed this factor in favor of transfer when the business is on the brink of collapse and depends to a large degree on personal involvement. Valdes, 2006 WL 738403, at *6–7; Aronoff, 463 F. Supp. at 459.

Mr. Young admits that trial anywhere other than in Florida will disrupt his property management business. But he argues that holding a trial in to Massachusetts would be less

7

disruptive because it is closer to Florida. Mr. Young fails to explain how his ability to maintain contact with his business is significantly improved by defending the case in Massachusetts. Especially given the ease of electronic communication, Mr. Young has not carried his burden to show that this factor weighs in his favor.

In contrast, Mr. Taylor argues that his business is on the brink of collapse and will fail without his personal involvement. As support, he attaches an exhibit detailing the financials of his business showing a net-negative loss for the year as of August 2012. The government disputes Mr. Taylor's assertions, arguing that he has been able to operate his business for long periods already without his physical presence in Massachusetts. The government does concede that AISC may fail due to the loss of many clients after criminal charges were brought against Mr. Taylor. Because both sides are willing to admit that AISC may be on the brink of collapse, and because the court accepts as true Mr. Taylor's conclusory assertions that AISC requires his personal involvement, this factor weighs in favor of transfer.

6. **Expense**

Because every criminal prosecution imposes expenses on defendants, a moving party must show more than the normal inconvenience and burdens associated with trial to justify transfer. Valdes, 2006 WL 738403, at *7. A defendant must make more than bare assertions— he must make a showing that, at least to some degree, he has insufficient funds to provide for their defense if the case is not transferred. Id. Additionally, "[m]erely shifting the burden of expense from one party to another is not a good reason for transfer." Kanner, 2008 WL 2663414, at *7.

Mr. Young contends, without any factual support, that the costs of transporting himself, counsel, and the defense witnesses to Utah would be ruinous. But he fails to show why those

8

costs are anything more than the normal inconvenience associated with a trial outside his home district. Mr. Young also fails to estimate costs or document his alleged inability to pay them.

Similarly, Mr. Taylor argues that the costs of transporting himself, counsel, and the defense witnesses would be ruinous because he has no savings and no longer has access to any funds from his business. But Mr. Taylor does not adequately support his contentions of illiquidity, and the court does not find his conclusory statements persuasive. If the court were to grant either or both of the motions to transfer, it would result in a significant cost increase to the government because it would effectively split the action in two. The government would have to conduct a trial against in Massachusetts, as well as a trial against any remaining Defendants in Utah, thereby shifting—and in some respects doubling—costs to the government. As a result, this factor does not weigh in favor of transfer.

   7. **Location of Counsel**

Generally, a defendant can receive adequate counsel no matter the location, and this factor may be of minimal importance. But some courts have noted that counsel may not be "wholly fungible" because of counsel's experience with the case or with local law. See Layne, 2005 WL 1009765, at *6; Aronoff, 463 F. Supp. at 460.

Mr. Young's counsel is located in Utah, and has worked with him throughout this case. So, as Mr. Young concedes, this factor weighs against transferring the charges against Mr. Young.

In contrast, both the government and Mr. Taylor argue that their counsel is not wholly fungible. Mr. Taylor argues his primary counsel is located in Massachusetts and that they have special insight and experience with Mr. Taylor and AISC that is irreplaceable by any local counsel in Utah. The government contends that the prosecutors located in Utah have participated

9

in this multi-year, international investigation involving voluminous discovery, and that it would be unreasonable for any prosecution team in Massachusetts to take over. So no matter where the trial is located, at least one side would need to fly its counsel out to the place of trial and set up a temporary base of operations. But as noted by Mr. Taylor, the government should feel "at home" not only in Utah but also in Massachusetts because of the presence and support of government offices in both states. See United States v. Benjamin, 623 F. Supp. 1204, 1212 (D.D.C. 1985). Accordingly, although both sides have solid arguments, this factor weighs slightly in favor of transferring venue for Mr. Taylor.

8. **Relative Accessibility**

The efficiency of modern air transportation undercuts any argument that one venue is more accessible than the other. Spy Factory, 951 F. Supp. at 460 (citing United States v. U.S. Steel Corp., 233 F. Supp. 154, 158 (S.D.N.Y. 1964)). Given the ease of modern transportation and that Utah serves as a major airline hub, both Utah and Massachusetts are comparatively accessible. This factor does not favor either side.

9. **Docket Conditions of Each District**

The key consideration regarding relative docket conditions is whether the transferee district can more easily give the defendant a speedy trial. United States v. Polizzi, 500 F.2d 856, 900 (9th Cir. 1974); United States v. Lopez, 2002 WL 31498984, at * 4 (D. Kan. Sept. 5, 2002); United States v. Gruberg, 493 F. Supp. 234, 242 (S.D.N.Y. 1979); United States v. Bloom, 78 F.R.D. 591, 610 (E.D. Pa. 1977).

Both Mr. Young and Mr. Taylor argue that the judges in the District of Utah have more cases per judge than the District of Massachusetts, and so the relative docket conditions favor transfer. But their argument misses the mark—the relevant statistics are those that indicate

10

whether the district can more easily give the defendant a speedy trial. According to the most recent judicial statistics available, the median time from filing to disposition for criminal felonies in the District of Massachusetts is 16.1 months, but is only 5.1 months in the District of Utah. See Federal Court Management Statistics, September 2011, United States Courts, available at http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/DistrictCourtsSep2011.aspx. Based on the difference between the two districts, "there is little possibility that, if transferred, this case would go to trial any faster there [in Massachusetts] than has already been arranged for here [in Utah]." Bloom, 78 F.R.D. at 610. This factor weighs against transfer.

**10. Other Special Elements**

    **a. Multiple Litigations in the Same District**

One "special element" the court considers important in this case is the existence of multiple ongoing litigations against the Defendants in the District of Utah.

Not only are Mr. Young and AISC facing criminal allegations in this case, they are also involved in a forfeiture of property case. See AISC's Mot. to Intervene, United States v. Approximately Up to $15,034,663 in Funds Contained in Ten Bank Accounts, No. 2:11-cv-806 (D. Utah Sep. 13, 2011), ECF No. 11; Order Granting David Young and Hernando Cnty. Holdings, LLC's Mot. to Intervene, United States v. Approximately Up to $15,034,663 in Funds Contained in Ten Bank Accounts, No. 2:11-cv-806 (D. Utah Feb. 3, 2012), ECF No. 71. Those forfeiture proceedings involve property allegedly obtained as part of the alleged criminal activities that are the subject of the indictment here. See Am. Verified Compl. for Forfeiture In Rem, United States v. Approximately Up to $15,034,663 in Funds Contained in Ten Bank Accounts, No. 2:11-cv-806 (D. Utah Sep. 2, 2011), ECF No. 8. Neither Mr. Young nor AISC has moved to transfer the forfeiture proceedings. If the court were to transfer this criminal case

to Massachusetts, Mr. Young and AISC would be forced to conduct litigation in two different states, rather than just one. Moreover, because Mr. Young has retained the same Utah counsel in both this criminal case and in the forfeiture case, he would either have to fly his counsel from Utah to Massachusetts for the criminal case, or seek new counsel in Massachusetts.

Similarly, Mr. Taylor faces criminal charges not only in this case, but also in another related case. See Indictment, United States v. Lustyik, No. 2:12-cv-645 (D. Utah Oct. 18, 2012), ECF No. 39. That indictment alleges attempts to obstruct the investigation and prosecution of this case. See id. at 4–5. He has not moved to transfer or consolidate those proceedings, and granting a transfer of this case would result in his having to litigate matters in both Utah and Massachusetts.

As a result, the existence of other ongoing matters in Utah weighs against granting either motion to transfer venue.

**b. Severance of the Proceedings**

Another "special element" is whether transfer will effectively split the case and unduly multiply the burden of litigation on witnesses, the prosecution, and the judiciary. In a multi-defendant case, the court cannot transfer non-moving defendants. See Fed. R. Crim. P. 21(b) (allowing a court to transfer venue "[u]pon the defendant's motion," but only for counts "against that defendant" (emphasis added)); see also United States v. Stratton, 649 F.2d 1066, 1076 (5th Cir. 1981); Yeloushan v. United States, 339 F.2d 533, 536–37 (5th Cir. 1964); United States v. Choate, 276 F.2d 724, 727 (5th Cir. 1960); United States v. Clark, 360 F. Supp. 936, 945–46 (S.D.N.Y. 1968) (listing cases). As a result, when a motion to transfer is made by fewer than all defendants, granting a transfer would sever the proceedings. See, e.g., United States v. Morrison, 946 F.2d 484, 489–90 (7th Cir. 1991) (affirming a district court's denial of one

12

codefendant's motion to transfer venue because it would have severed the proceedings originally brought against six codefendants, "resulting in great inconvenience to the witnesses involved as well as considerable expense to the government"); United States v. Zylstra, 713 F.2d 1332, 1336 (7th Cir. 1983) (affirming a district court's denial of one codefendant's motion to transfer venue because "it would in all probability have resulted in the severance of several trials into multiple trials in various districts throughout the country involving the other codefendants"). Because there is a preference in the federal system that codefendants who are indicted together be tried together, United States v. Durham, 139 F.3d 1325, 1333 (10th Cir. 1998), and because "severing the trial of properly joined defendants without good reason is contrary to the interest of justice," the effect of severance should be considered in the Rule 21 inquiry along with all of the other factors identified in Platt. United States v. Thomas, No. 06-CR-365, 2006 WL 2283772, at *2 (S.D.N.Y. Aug. 9, 2006); United States v. Valdes, No. 05-CR-156, 2006 WL 738403, at *10 (S.D.N.Y. Mar. 21, 2006); see, e.g., United States v. Testa, 548 F.2d 847, 856 (9th Cir. 1977) (noting that the possibility of severance should be considered as a factor in a motion to transfer under Rule 21(b)); Bloom, 78 F.R.D. at 610 (denying transfer because it would result in severance, reasoning that a single trial of codefendants best serves the interests of justice and judicial economy).

For example, in United States v. Thomas, Mr. Huang and Mr. Thomas were indicted in the Southern District of New York for conspiring to secretly supply Chinese telecommunications equipment to the Government of Iraq. 2006 WL 2283772, at *1. Mr. Huang, who lived in Connecticut, moved to transfer venue to the District of Connecticut, arguing that his advanced age, gout, sleep apnea, the needs of his wife and sixteen-year-old child, and a related litigation already existing in Connecticut militated in favor of transfer. Id. In contrast, the other

defendant, Mr. Thomas, did not move for a transfer. Id. at *3. The court noted the "well established presumption that defendants who are properly joined in an indictment should be tried together," and reasoned that if the transfer were granted, it would effectively sever Mr. Huang's charges from Mr. Thomas' charges. Id. The district court denied Mr. Huang's motion to transfer. Id. at *2–3.

The circumstances here weigh against transfer because granting either or both of the motions to transfer would leave behind Defendant Christopher Harris, multiplying the number of trials, increasing the expense to the government, and causing great inconvenience to all witnesses who would be called to testify in both Utah and Massachusetts. No moving Defendant has demonstrated any good reason why severing his trial would better serve the interest of justice. This factor weighs against transfer.

### III. Conclusion

As shown above, some of the foregoing Platt factors weigh in favor of transfer, some of the factors are neutral, and some of them weigh against transfer. Given the facts of this case, the court feels that the factors weighing against transfer are the most compelling. The moving Defendants have not shown that the facts compel transfer, and so have not carried their heavy burden to show that the interests of justice require deviation from the general rule that a criminal prosecution remain in the original district.

Accordingly, Mr. Young's motion to transfer venue (Docket No. 65) is DENIED, and Mr. Taylor's and AISC's motion to transfer venue (Docket No. 69) is DENIED.

SO ORDERED this 5th day of November 2012.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge