IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DAVID YOUNG, et al.,<br><br>    Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:12-CR-502-TC |
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ROBERT G. LUSTYIK, JR., et al.,<br><br>    Defendants. | ORDER AND<br>MEMORANDUM DECISION<br><br><br>Case No. 2:12-CR-645-TC |

In these related criminal prosecutions, two defendants (Michael Taylor and American International Security Corporation) have filed a Motion To Vacate September 13, 2012 Transfer Order And To Transfer Or, In The Alternative, To Recuse And For An Evidentiary Hearing.[1] For the reasons set forth below, the motion is DENIED.

## BACKGROUND

This court presides over two related criminal matters: <u>United States v. Young</u> (2:12cr502)

---

[1] The same motion was filed in 2:12cr502 as Docket No. 121 and in 2:12cr645 as Docket No. 170.

("Taylor 1" or '502) and United States v. Lustyik (2:12cr645) ("Taylor 2" or '645). This court was randomly assigned to preside over Taylor 1 on August 22, 2012, when the United States brought an indictment against four defendants, including Michael Taylor and American International Security Corporation (AISC). On October 18, 2012, the United States indicted Mr. Taylor and two other defendants in Taylor 2, a case alleging bribery of an FBI agent and obstruction of the investigation and indictment in Taylor 1. Taylor 2 was assigned to Chief Judge Ted Stewart. Because Taylor 1 and Taylor 2 are related cases, Judge Stewart transferred Taylor 2 to this court on October 29, 2012, under Local Rule DUCrimR 57-3(a).[2] This transaction is not questioned by Mr. Taylor or AISC. Rather, the events that occurred in Taylor 1 (before Mr. Taylor was indicted in Taylor 2) are at issue here.

After this court was assigned to preside over Taylor 1, the court learned through an August 27, 2012 pleading on the docket[3] that Mr. Taylor and AISC had retained local counsel (their principal retained attorneys were based in Boston, Massachusetts) from the firm of Parsons Behle & Latimer. The counsel making an appearance were Francis W. Wikstrom and Michael W. Young. Upon seeing Mr. Wikstrom's name, the court recused. (See September 4, 2012 Order of Recusal (Docket No. 23 in '502).) The recusal was done as a matter of course because this court routinely recuses in any case in which Mr. Wikstrom appears. Upon this court's

---

[2]Oct. 28, 2012 Order of Reassignment (Docket No. 60 in '645). The local rule provides that "[w]here there are two or more cases pending against the same defendant before two or more assigned judges, the United States, the defendant, or the court on its own motion, where appropriate, may move by written motion before either judge to assign the case to the judge with the low-number case." DUCrimR 57-3(a).

[3]See Motion for Pro Hac Vice Admission and Consent of Local Counsel (Docket No. 17 in '502).

recusal, the case was randomly re-assigned to Judge Clark Waddoups.

Days after the court recused, it learned that Mr. Wikstrom and Parsons Behle & Latimer had actually withdrawn as local counsel and were not working on the criminal matter (apparently Mr. Wikstrom and Parsons Behle & Latimer were local counsel for Mr. Taylor and AISC in a civil forfeiture proceeding before a different federal district court judge in this district and so had some relationship with the defendants before the Taylor 1 indictment occurred). (See also September 12, 2012 Notice of Attorney Appearance by Rebecca H. Skordas as local counsel for Mr. Taylor and AISC (Docket No. 28 in '502').) Because of this error, the court, to whom the case had originally been assigned, spoke to Judge Waddoups about transferring the case back in light of the misunderstanding about local counsel and the fact that no conflict actually existed. Judge Waddoups, who had been assigned to the case for approximately nine days, returned the case to this court. (See September 13, 2012 Docket Text Order transferring case back to Judge Tena Campbell (Docket No. 29 in '502').)

Mr. Taylor and AISC seek to have the September 13, 2012 Order vacated, for they contend it was issued in violation in the rule requiring judges to be randomly assigned to new cases.[4] They further contend that Taylor 1 must go back to Judge Waddoups, who had been assigned after this court's mistaken recusal, and that Taylor 2 must be transferred by Judge Stewart to Judge Waddoups under the local case transfer rule. In the alternative, Mr. Taylor and AISC attempt to show that a separate conflict (or a serious appearance of impropriety) requires

---

[4] See 28 U.S.C. 137 (requiring local rules to set forth procedure for dividing case assignments among multiple judges in one district); Local Rule DUCivR 83-2 (creating random case assignment system, and creating rule for transferring cases once assigned); DUCrimR 57-3(a) (creating rule for transferring cases once assigned).

this court to recuse again or allow an evidentiary hearing to proceed before a different judge to shed light on the events surrounding the transfer of the case from Judge Waddoups to this court and alleged relationships between certain parties allegedly related to this matter.

ANALYSIS

**Motion to Vacate**

Mr. Taylor and AISC contend that Judge Waddoups' September 13, 2012 docket text order returning the case to Judge Campbell is void because it was entered in violation of 28 U.S.C. § 137 and the random selection case assignment system approved by the judges of this district in local rule DUCivR 83-2. The United States code provides that "[t]he business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court." 28 U.S.C. § 137. Following that statutory mandate, as Mr. Taylor and AISC point out, the District of Utah adopted a local rule providing that "[a]ll case assignments are randomly assigned by an automated case assignment system approved by the judges of the court and managed by the clerk under the direction of the chief judge." DUCivR 83-2(a).[5] Mr. Taylor and AISC also cite to two cases that, they contend, support their position: <u>United States v. Phillips</u>, 59 F. Supp. 2d 1178 (D. Utah 1999), and <u>Utah-Idaho Sugar Co. v. Ritter</u>, 461 F.2d 1100 (10th Cir. 1972). They cite to <u>Ritter</u>, asserting that "no judge has the authority to unilaterally assign or reassign a case other than as permitted by the Court's Rules." (Mot. Vacate at 2.) Similarly, they rely on <u>Phillips</u> to support their contention that "a judge assigned to a case

---

[5]This rule applies in both civil and criminal matters. <u>See</u> DUCrimR 57-2 ("Supervision of the random assignment of criminal cases to the judges of the court is the responsibility of the chief judge and will proceed as specified in DUCivR 83-2.").

under the Court's Random Selection Case Assignment System has 'no express power . . . to reassign a case.'" (Id. (quoting Phillips, 59 F. Supp. 2d at 1185).) Both of these cases are factually distinguishable and inapposite because they do not address the issue before this court.

In Utah-Idaho Sugar Co. v. Ritter, 461 F.2d 1100 (10th Cir. 1972), which pre-dates the existing version of rules under which the court now operates, the court was faced with an entirely different situation. There, the judge had unilaterally promulgated case assignment rules without approval from the other judges in their district (indeed, over their objection). To resolve the disagreement, the Tenth Circuit issued a standing order designating how cases were to be assigned in light of the disagreement among the judges. When the judge again reassigned cases in violation of the procedures set forth in the valid, still-effective Tenth Circuit order, the Tenth Circuit held that the reassignments were void. The Ritter case simply stands for the proposition that the rules are applicable and effective until modified by the actives judges through written agreement. Apart from the fact that a different set of rules applies now (thirty years later), the transfer from Judge Waddoups does not run astray of the overall concepts articulated in Ritter, particularly in light of other Tenth Circuit precedent discussed below.

In United States v. Phillips, the defendant was re-indicted after his previous criminal case was dismissed without prejudice for violation of the Speedy Trial Act. After Phillips was assigned to a new judge through the random case assignment process, the United States filed a motion requesting transfer back to the judge who had presided over the originally-indicted case. The United States cited to reasons such as judicial efficiency, avoidance of duplicated efforts, and wasted resources. The Phillips court denied the motion to transfer on the basis that the random case assignment process was put in place for good reason and to override that system

5

would improperly allow a party to engage in "judge shopping."

The situation in Phillips is distinctly different from the one facing this court. Judge Waddoups' September 13, 2012 Order corrected an administrative error and reinstated the initial random assignment. In other words, this court essentially vacated the recusal order on the basis that it was entered in error. There was no conflict. Judges have a duty to handle cases assigned to him or her. "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987).

Moreover, two Tenth Circuit cases more on point support the court's conclusion that the September 13, 2012 Order was valid.

First, there is United States v. Diaz, 189 F.3d 1239 (10th Cir. 1999). In Diaz, the Tenth Circuit held that the assignment of five district judges to handles various portions of Mr. Diaz's criminal case was not a violation of his due process rights. Mr. Diaz argued that "the [case] assignment procedure [of rotating assignments of judges in the District of New Mexico] is not authorized by rule or order, and that, even if the district court had authority to adopt the procedure, judicial efficiency is an improper purpose to justify rotating judicial assignments." Id. at 1243. As part of its ruling, the Tenth Circuit discussed the discretion of the court to manage court business, and cited to 28 U.S.C. § 137, "which vests the district court with broad discretion in assigning court business to individual judges." Id. The Tenth Circuit also cited to Federal Rule of Criminal Procedure 57(b), which "provides that when there is no controlling law, '[a] judge may regulate practice in any manner consistent with federal law, these rules, and local rules of the district." Id. at 1243-44. The court concluded that:

> [i]n light of this discretion in managing court business, we agree with the Fifth Circuit that: "[d]istrict judges may by *rule, order or consent* transfer cases between themselves . . . . Each judge of a multi-district court has the same power and authority as each other judge . . . . Moreover, the District Judges have the inherent power to transfer cases from one to another for the expeditious administration of justice."

Id. at 1244 (quoting United States v. Martinez, 686 F.2d 334, 338 (5th Cir. 1982) (emphasis in original)).

Second, there is Hutchinson v. Pfeil, 211 F.3d 515 (10th Cir. 2000). In Hutchinson, the Tenth Circuit rejected the party's argument that the case judgment was void because the district judge lacked authority to handle the case after the case had been "transferred unilaterally from another judge of the district in a manner not expressly authorized by the local rules[.]" The Hutchinson court quoted Diaz, pointing out the inherent power of district court judges to transfer cases from one to another. The Hutchinson court referred to this "traditional discretionary power of intra-district transfer" and found that the local rule dealing with initial assignment of cases to judges did not proscribe that inherent power. Id. Finishing out its order, the Tenth Circuit also stated that "not only was the reassignment within the discretion of the district court, Mr. Hutchinson has failed to allege that the reassignment resulted in any constitutionally cognizable prejudice." Id.

Local rule DUCivR 83-2 does not proscribe the procedure followed by Judge Waddoups when he issued his September 13, 2012 Order. In fact, the inherent authority of the court to manage court business allowed the order, which actually gives more credence to the process of randomly assigning cases to judges (i.e., upon finding that a mistaken belief had led to recusal, and after having the case for no more than nine days, Judge Waddoups rectified the situation and

7

put it back to status quo).

For the foregoing reasons, the court finds that the September 13, 2012 order was not void and should not be vacated.

**Motion for Recusal and/or Evidentiary Hearing**

In addition to their challenge to the September 13, 2012 transfer order, Mr. Taylor and AISC contend that even if Judge Waddoups' order was valid, this court should recuse for other reasons, or, at a minimum, allow an evidentiary hearing to be conducted by a separate judge to determine whether recusal is warranted.

The United States Code contains two provisions that address a party's motion for recusal of a district court judge. The first is 28 U.S.C. § 144, which sets forth circumstances under which an evidentiary hearing before another judge is warranted, and the second is 28 U.S.C. § 455, which sets forth certain conditions under which a judge must recuse. Because Mr. Taylor and AISC are asking for either an evidentiary hearing (even though they do not specifically cite 28 U.S.C. § 144) or an immediate recusal, the court will discuss both statutory provisions.

**Governing Standards**

The grounds for recusal are set forth in 28 U.S.C. § 455 (titled "Disqualification of justice, judge, or magistrate judge"), which provides in relevant part as follows:

(a)  Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a).[6]

---

[6]The statutory provision also provides that a judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ." 28 U.S.C. § 455(b)(1). Although Mr.

The test for recusal under § 455(a) is "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987). See also United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (the question is "whether a reasonable factual basis exists for calling the judge's impartiality into question."). In other words, the standard is an objective one.

Furthermore, under § 455, "factual allegations do not have to be taken as true. Nor is the judge limited to those facts presented by the challenging party." Hinman, 81 F.2d at 939 (internal citations omitted). Rather, "[t]he inquiry is limited to outward manifestations and reasonable inferences to be drawn therefrom." Cooley, 1 F.3d at 993.

The statutory standards for recusal are balanced out by a judge's "duty to sit" on cases filed with the court. "[A] judge has a strong duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995). In Switzer v. Berry, 198 F.3d 1255 (10th Cir. 2000), the Tenth Circuit emphasized that "[t]his court has long held that section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice. Moreover, '[t]he statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice.'" Id. at 1258 (quoting Cooley, 1 F.3d at 993) (internal citations omitted).

Under certain circumstances, a party has a right to an evidentiary hearing to explore the

---

Taylor and AISC do not cite to § 455(b)(1) as the basis for their motion, the tone of their pleadings suggests that they wish to explore certain events in an evidentiary hearing that, they believe, would necessitate recusal under that section.

alleged bias or prejudice.

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144 (emphasis added). A "sufficient affidavit" must "state the facts and the reasons for the belief that bias or prejudice exists . . . . A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith." Id.

As discussed below, Mr. Taylor and AISC have not met their burden for obtaining either an evidentiary hearing or recusal.

**Allegations**

In their motion, Mr. Taylor and AISC present some facts, but in large part they make unsupported allegations, reach unsupported conclusions, and speculate about events to support their contention that this court's "impartiality might reasonably be questioned" and that recusal is necessary under § 455(a). They provide the following reasons:

> Recusal is required under the circumstances in this case in light of the manner in which this case was reassigned to Judge Campbell in violation of the Court's Rules and established case law in this jurisdiction following her prior recusal, the abrupt withdrawal of Defendants' local counsel and the return of the case to Judge Campbell less than 24 hours after the substitution of local counsel, the fact of local counsel's relationship with Judge Campbell (which was unknown to Defendants and undersigned counsel until recently), the fact that Judge Campbell's husband is an attorney in the same firm, and Judge Campbell's long-standing relationship with the U.S. Attorney's Office and, in particular, lead counsel for the United States, Brent D. Ward, who are the specific entities and persons whom the government alleges Mr. Taylor and his co-defendants sought to "crush" and "blow the doors off of."

10

(Mot. to Vacate or Recuse at 2.)

The record does not bear out their conclusion and certainly does not warrant what would be a fishing expedition in the guise of an evidentiary hearing. To support their motion, they present the declarations of Mr. Steven Brooks, Ms. Rebecca Skordas, and Mr. Daniel Marino. The declarations also contains some exhibits, including correspondence between Mr. Brooks and Parsons Behle & Latimer, and correspondence between Mr. Marino and Parsons Behle & Latimer. The evidence does not support the many conclusory allegations in the motion for recusal.

First, the issues concerning the transfer of the case have been explained above and do not require the transfer order to be vacated. As for the timing of the events, they follow in logical sequence. The '502 case was randomly assigned to this court on August 22, 2012. On August 27, 2012, a pleading was filed that listed local counsel as Mr. Wikstrom. On September 4, 2012, this court recused based on the appearance of Mr. Wikstrom, and Judge Waddoups was randomly assigned to the case. Eight days later, on September 12, 2012, Rebecca Skordas, from a different law firm, filed an appearance as local counsel, replacing Mr. Wikstrom. Whether the withdrawal of Mr. Wikstrom was "abrupt" or not, and whether such withdrawal was inconsistent with Mr. Brooks's personal "understanding," is of no consequence. The undisputed record demonstrates the reasons for Parsons Behle & Latimer's withdrawal as local counsel.[7] Finally, the day after

---

[7] Mr. Taylor and AISC point to "the fact of local counsel's relationship with Judge Campbell [i.e., Mr. Wikstrom's longstanding friendship with this court]" and "the fact that Judge Campbell's husband is an attorney in the same firm." But this actually corroborates the reasons for the recusal and the reason for vacating the recusal – Parsons Behle & Latimer and Mr. Wikstrom were not defending Mr. Taylor and AISC in the criminal case. The evidence shows that their brief, temporary appearance was to allow out-of-district counsel to obtain *pro hac vice*

11

Ms. Skordas made an appearance, Judge Waddoups returned the case to this court because there was no conflict and no justification for recusal. The conspiratorial tone of Mr. Taylor's and AISC's allegations does not change the facts on the record. Indeed, correspondence from Michael Young to Mr. Marino is conclusive.

> I am writing in response to your letter dated January 14, 2013. It is unfortunate that our previous letter did not resolve your unwarranted conclusion that our unilateral decision to decline representation of [AISC and Mr. Taylor] in the subject criminal matter was "made in order to remove a conflict for Judge Campbell." To be absolutely clear, our decision not to represent AISC and Mr. Taylor in the criminal matter had nothing whatsoever to do with Judge Campbell or the issue of which Judge would handle the case. We simply were not willing to undertake representation of AISC or Mr. Taylor in the new criminal matter.

(Jan. 15, 2013 Letter from M. Young to D. Marino, attached as Ex. D to Decl. of Daniel Marino (Docket No. 170-4).) In an earlier letter, Mr. Young stated that "[n]either Mr. Wikstrom nor I have spoken with Judge Campbell, Gordon Campbell, or Judge Waddoups or anyone other than the Deutsch Williams lawyers about this case. The only discussions regarding the representation of AISC and Mr. Taylor by anyone at this firm were between Mr. Wikstrom and me." (Jan. 9, 2013 Letter from M. Young to D. Marino at 3, attached as Ex. B to Marino Decl. (Docket No. 170-4).) There is no evidence in the record that would allow a reasonable person to question the veracity of Mr. Young's statements.

Second, Mr. Taylor and AISC point to what they refer to as this court's "long-standing relationship with the U.S. Attorney's Office and, in particular, lead counsel for the United States, Brent D. Ward." Yes, this court worked as an Assistant United States Attorney, many years ago. Since then, the court has presided over hundreds of criminal cases prosecuted by the US

---

status to file an emergency motion, nothing more.

Attorney's Office in this district.[8] As for any supposed "long-standing relationship" with Mr. Brent Ward, their papers have no evidence of such. The fact that Mr. Ward was a colleague of then-AUSA Campbell approximately twenty years ago shows nothing more than a "mere casual relationship" from the past, which, as Mr. Taylor and AISC concede, does not require recusal. (See Mem. Supp. Mot. Vacate or Recuse at 20 (citing Moran v. Clarke, 247 F.3d 799, 806 (8th Cir. 2001).)

The defense for Mr. Taylor and AISC repeatedly admits in the supporting memorandum that it "does not know" whether the allegations it makes are true or not. (See id. at 20-21.) Nothing in the attached declarations provides any support for those allegations either.[9]

The record does not support the request for an evidentiary hearing, much less a recusal. No reasonable person would question this court's impartiality, much less conclude than an actual

---

[8]Ms. Skordas, in her Declaration, states that she "assumed [without any information to support the assumption] that Judge Campbell's recusal was due to her belief that AUSA Stewart Waltz [sic] was possibly involved in the case. I made this assumption because I am aware that Judge Campbell has recused herself in the past from cases in which Mr. Waltz [sic] is involved because of her social relationship with him." (Decl. of Rebecca Hyde Skordas ¶ 3 (Docket No. 170-3).) (The court notes that the conclusion, or "understanding," expressed in Mr. Brooks' Declaration (Docket No. 170-2) about Mr. Walz as the reason for recusal is solely based on Ms. Skordas's unsupported assumption.) Although it is true that this court recuses on cases in which AUSA Stewart Walz appears, this fact is irrelevant because Mr. Walz is, apparently, not involved with this case and no such reason was ever articulated to Ms. Skordas or anyone else.

[9]Mr. Taylor and AISC speculate that Mr. Ward "selected" the District of Utah as the venue for prosecution. They further speculate that this court desired to have the case because Mr. Ward was prosecuting and perhaps because presiding over the case would allow this court to protect the Utah office and Utah prosecutors. No evidence supports the speculation. Indeed, the court makes the following observation: The '502 case, and the events surrounding the recusal and return of '502 to this court, occurred before the '645 case was indicted. Any alleged manipulation would have been impossible because the indictment in Taylor 2 had not yet occurred. And there is no evidence that the AUSA's office communicated in any way with the court to give the court a "heads up" about the impending indictment.

13

bias or prejudice exists. As the Tenth Circuit has acknowledged, "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion and similar non-factual matters" do not satisfy the requirements for recusal under § 455(a). <u>United States v. Cooley</u>, 1 F.3d 985, 993 (10th Cir. 1993).

**ORDER**

For the foregoing reasons, the Motion to Vacate September 13, 2012 Transfer Order And To Transfer Or, In The Alternative, To Recuse And For An Evidentiary Hearing (Docket No. 121 in 2:12cr502 and Docket No. 170 in 2:12cr645) is DENIED.

SO ORDERED this 30th day of January, 2013.

BY THE COURT:

*[signature: Tena Campbell]*

TENA CAMPBELL
U.S. District Court Judge